**IN THE
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN**

LG-SOLUTIONS UNLIMITED, LLC    )
            )
     Plaintiff,           )
            )
Vs.                  )     Case No:
            )
MICHIGAN DEPARTMENT OF    )
TECHNOLOGY, MANAGEMENT,   )
AND BUDGET, MICHIGAN STATE  )
POLICE.              )
            )
     Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Now comes the Plaintiff LG-Solutions Unlimited, LLC (LG-Solutions), pursuant to Federal Rules of Civil Procedure, Rule 56(a), (3), by and through counsel of record Avery J. Bradley, hereby motions the court to issue a prompt order of Declaratory and Injunctive relief.

## I. INTRODUCTION

1. This is an action for declaratory and a preliminary injunction to maintain the *status quo* of a Request for Proposal (RFP) published by the Michigan Department of Technology, Management & Budget (DTMB), compiled on behalf of, and in conjunction with the Michigan State Police (MSP).

2. On or about January 19, 2023, the DTMB published RFP No. 230000000685, published on SIGMA VSS. [1] The RFP sought a "[c]ontractor to provide a web-based

---

[1] SIGMA VSS = Michigan's Statewide Integrated Governmental Management Applications, Vendor Self Service.

1

service to dispatch towing services as needed by the Michigan State Police" (MSP). LG-Solutions was one of two bidders to submit a proposal RFP No. 230000000685; the other bidder, Vehicle Management Solutions (VMS).

3. The dispute arises out of the acts and omissions of the DTMB in how the DTMB processed and evaluated (or the lack thereof), the proposal submitted by LG-Solutions. The DTMB ultimately recommended that VMS be awarded the contract for RFP No. 230000000685.

4. LG-Solutions filed a Bid Protest against the recommendation of the DTMB's to award the contract to VMS. *In lieu* of reviewing and investigating the Bid Protest, the DTMB withdrew its award recommendation and arbitrarily cancelled the RFP.

5. On August 21, 2024, LG-Solutions filed a Complaint for Preliminary Injunction in the Michigan Court of Claims. (Civil Action No: 24-000135-MZ). The Complaint was assigned to Hon. James Robert Redford. Motions for Summary Judgment, Discovery, Evidentiary Hearing and responses by the DTMB were filed in the case. (Register of Actions, attached hereto as Exhibit A).[2]

6. On or about December 19, 2024, the DTMB published RFP No. 250000000142, on SIGMA VSS. This proposal seeks "[t]owing Dispatch Services to be utilized by the MSP anywhere in the state of Michigan."

7. On January 9, 2025, LG-Solutions filed a Temporary Restraining Order (TRO) in the Court of Claims against the publication of RFP No. 250000000142.

8. RFP No. 250000000142 has a scheduled close date of **February 20, 2025**.

---

[2] Plaintiff and Defendants also filed competing motions for Summary Judgment. (Register of Actions).

9. The August 21, 2024, Complaint for Preliminary Injunction and the January 9, 2025, application for a Temporary Restraining Order remain pending in the Court of Claims. (Register of Actions, attached hereto as Exhibit A).

## II. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants maintain offices and perform their official statewide duties in Lansing, which is within this District.

## III. THE PARTIES

12. Plaintiff LG-Solutions Unlimited is a corporation incorporated under the laws of the State of Michigan, with its principal place of business is in Detroit, Michigan.

13. Defendant Michigan Department of Technology, Management & Budget (DTMB), is a unit of government of the State of Michigan, with its principal place of business in Lansing, Michigan.

14. Defendant Michigan State Police (MSP) is a unit of government of the State of Michigan, with its principal place of business in Lansing, Michigan.

## IV. ARGUMENT

In determining whether to grant a preliminary injunction, the court should consider the four factors well-known throughout the legal landscape. These factors are: (i) whether the movant has a strong likelihood of success on the merits, (ii) whether the movant would suffer irreparable injury absent a stay, (iii) whether granting the stay would cause substantial harm to others, and (iv) whether the public interest would be served by granting the stay. ***United of Omaha Life Ins. Co. v. Solomon***, 768 F. Supp. 613, 615

3

(W.D. Mich.1990)("Factors the Court must "carefully balance" in deciding whether to issue

a preliminary injunction include: (1) whether the movant has shown a strong or substantial

likelihood or probability of success on the merits; (2) whether the movant has shown

irreparable injury; (3) whether the preliminary injunction could harm third parties; (4)

whether the public interest would be served by issuing the preliminary injunction.").


i.    **LG-Solutions has a strong likelihood of succeeding on the merits.**

MCL Section 18.1261(1) provides  "[t]he [DTMB] shall provide for the purchase

of, the contracting for, and the providing of  […] services, […], and all other items as

needed by state agencies for which the legislature has not otherwise expressly

provided. If consistent with federal statutes, in all purchases made by the [DTMB], all

other things being equal, preference shall be given to products manufactured or

services offered by Michigan-based firms ….

> ➤ (2) The [DTMB] shall make all discretionary decisions concerning the
> solicitation, award, amendment, cancellation, and appeal of state
> contracts.

> ➤ (6) The [DTMB] shall issue directives for the procurement, […] of […] and
> services needed by state agencies. The [DTMB] shall provide standard
> specifications and standards of performance applicable to purchases.

(Pub. Acts 1984, No. 431, Art 2, § 261, *eff*. March 29, 1985, *et seq*).

Commensurate with the legislative authority provided at MCL §18.1261(6),

Defendant DTMB promulgated the Michigan Procurement Policy Manual (MPPM). The

MPPM is the successor to the Vendors Guide governing procurement purchases made

by the State of Michigan. ***United of Omaha Life Ins. Co. v. Solomon***, *supra* at  616

(W. Dist. of Mich. 1990)("Based on the evidence before it, the Court is of the opinion

that the "Vendors Guide" serves as a *de facto* administrative scheme implementing the

Michigan Legislature's desire for the State to competitively bid contracts whenever possible."), *rev' on other grounds,* **United of Omaha Life Ins. Co. v. Solomon,** 960 F.2d 31(6th Cir. 1992). Accordingly,

> "The Michigan Procurement Policy Manual (MPPM) is designed to provide various stakeholders, including procurement professionals, end users, contractors, and taxpayers, a transparent and enterprise-wide standardized procurement policy and process. The MPPM is the official source of policy for all purchases made pursuant to Public Act 431 of 1984."

(MPPM, 1.2.1 Purpose). Further,  "[a]ll formal and informal solicitations must be evaluated in accordance with the terms of the solicitation. There are eight steps in the evaluation and negotiation process:

> Step 1 - Identification of statutory and other considerations
>
> Step 2 - Identification of responsive vendor
>
> Step 3 - Identification of responsible vendors
>
> Step 4 - Conducting the Technical Evaluation
>
> Step 5 - Conducting the Price Evaluation
>
> Step 6 - Negotiations
>
> Step 7 - Reference checks
>
> Step 8 - Evaluation Synopsis and Award Recommendation

(MPPM, 8.4 Evaluation and Negotiation Process).

In the bid protest submitted to the DTMB, and in the preliminary injunction filed in the Court of Claims, Plaintiff asserted, *inter alia,* that the DTMB failed to identify and apply the statutory and other considerations to the proposal submitted to RFP No. 230000000-685. In fact, the DTMB did not evaluate LG-Solutions's proposal in accordance with any of the eight steps identified in the MPPM.

With respect to the Bid Protest filed by LG-Solutions, the MPPM provides:

"A Vendor Protest" is a written communication from a vendor that submitted a proposal, but not selected for award. Vendor Protest received by the deadline to submit a protest as identified in the solicitation instructions ***must be investigated.*** A Vendor Protest must be process as follows:

**Central Procurement Services Solicitation** – Central Procurement Services' Relationship Management Division is responsible for conducting ***the review and investigation*** of a Vendor Protest received for a solicitation processed in the Central Procurement Services.

(MPPM, Chapter 9, Section 9.5, Vendor Protest).)(emphasis added). To investigate means, "to search or examine into the particulars of; examine in detail." ***Groves v. Dep't of Corr.,*** 1st District Court of Appeals, December 6, 2011 295 Mich. App. 1, 12, (quoting *Messenger v. Dep't of Consumer & Indus Servs,* 238 Mich App 524; 606 NW2d 38 (1999)(defining investigation to mean "the act or process of investigating or the condition of being investigated" ). The DTMB did not investigate any aspect of Plaintiff's Bid Protest.

*For example,* LG-Solutions was statutorily entitled to have a reciprocal preference applied to its proposal. See MCLS § 18.1268 (4) - "Only a bidder that has certified that it is a Michigan business ***is entitled*** to have the department apply a reciprocal preference ***in its favor*** against a business that submits a bid from a state which applies a preference law against out-of-state bidders. A bidder that does not certify that it is a Michigan business shall indicate in its bid the state in which it maintains its principal place of business for the purpose of applying that state's preference law against the bidder. (Emphasis added). Accordingly, Plaintiff protested that VMS, the recommended winner of the contract knowingly and intentionally submitted a different address on its proposal to circumvent the application of the

6

statutory entitlement to LG-Solutions. A deliberate, unlawful act explicitly prohibited by the Management and Budget Act of 1984. See MCLS § 18.1268:

> "A business that purposefully or willfully submits a false certification that it is a Michigan business or **falsely indicates the state in which it has its principal place of business is guilty of a felony**, punishable by a fine of not less than $25,000.00."

(MCLS § 18.1268(9)(emphasis added). Further, the protest averred that Defendants accepted VMS' proposal with forehand knowledge that VMS' address was incorrect; hence Defendant's unwillingness to review or investigate the allegations in the Bid Protest.

Because the DTMB did not evaluate the proposal in accordance with the eight steps of the MPPM, or "review and investigat[e]" the allegations alleged in the Bid Protest, Plaintiff has a strong likelihood of succeeding on the merits.


ii.    **LG-Solutions will suffer irreparable injury absent a stay.**

The DTMB and MSP's actions of publishing RFP No. 250000000142 notwithstanding the pending preliminary injunction complaint on RFP No. 230000000-685, have subjected LG-Solutions  to irreparable injury and placed it in a perilous position. The test is whether Plaintiff "… is likely to suffer irreparable harm in the absence of preliminary relief…." **Winter v. NRDC, Inc.,** 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). Irreparable harm is evaluated considering the totality of the circumstances affecting, and the alternatives available to, the party seeking injunctive relief.

As referenced above, RFP No. 250000000142 has an imminent scheduled close date of February 20, 2025. (Proposal Instructions, page 1 of 84 attached hereto as Exhibit B). As indicated by the Proposal Instructions  "**\*A bidder's proposal received at 3:00:01 p.m. Eastern is late and subject to disqualification.**" *Id.* (Emphasis in original). The imminent deadline presents LG-Solutions with a Hobson's choice; abandon the pending litigation in the Court of Claims or submit a proposal to the RFP.

Because the preliminary injunction complaint (to maintain the *status quo* of RFP No. 230000000685) and TRO application (to forestall RFP No. 250000000142),  are still open and pending before the Court of Claims, LG-Solutions will be irreparably harmed absent a stay of the February 20, 2025, proposal deadline.

### iii.    Granting a preliminary injunction will not cause substantial harm to others.

The grant of a TRO will not harm the DTMB or MSP in any way. By the Defendants' own words, the MSP met with one of perpetrators of the irregularities in the RFP No. 230000000685 as far back as 2019 and decided not to pursue a formal business relationship for contract services like that sought in both RFP'S which is the subject of the Preliminary Injunction and the TRO. Indeed, RFP No. 230000000685 was originally published January 19, 2023. The original proposal deadline for RFP 250000000142  was January 29, 2025. Defendants, of their own accord, have twice pushed back the proposal deadline; the first to February 6, 2025, the second, February 20, 2025. (Exhibit B).  So, a stay would in no way infringe upon an imminent need by the State.

iv.    **The public interest would be served by granting the stay.**

LG-Solutions has invested substantial time and money to acquire, develop and maintain its mobile application solution. Bids for State contracts must substantially comply with all the requirements relative thereto, as contained in statutes, provisions, and advertisements. It is with great difficulty, and only after a great expenditure of time, money and effort that LG-Solutions was able to mount a legal effort to get its proposal evaluated in accordance with the due process outlined in the MPPM.

Plaintiff's litigation was not aimed at second-guessing the DTMB's decision to award the contract in RFP No. 2300000685, to which no award was given. Compare ***Groves v. Dep't of Corr., supra,*** 295 Mich. App. at 7 ("Litigation aimed at second-guessing the exercise of discretion by the appropriate public officials in awarding a public contract will not further the public interest; it will only add uncertainty, delay, and expense to fulfilling the contract. (citation omitted) "The only circumstance that may provide a basis for an action to review the bidding process is the presence of evidence of "fraud, abuse, or illegality.").

The Management and Budget Act of 1984 and the Michigan Procurement Policy Manual (MPPM), was, in part, enacted for the benefit of bidders and citizens alike. See 1.2 Purpose and Application of the Michigan Procurement Policy Manual. 1.2.1 Purpose "The Michigan Procurement Policy Manual (MPPM) is designed to provide various stakeholders, **including procurement professionals**, **end users**, **contractors, and taxpayers,** a transparent and enterprise-wide standardized procurement policy and process. The MPPM is the official source of policy for all purchases made pursuant to Public Act 431 of 1984". (Emphasis added). Further, the power to reject any or all bids

may not be exercised arbitrarily or for the purpose of thwarting the public benefit

intended to be served by the competitive process. Citizens derives actual knowledge

and potential economic value from the procurement rules and information published by

the State, in part because this information is not generally known to the public and not

ascertainable through ordinary means. A critical factor to the public's success at

competing for an award, is the processes and rules set forth in the statutes and policy

manuals.

Indeed, as indicated by the 164 questions posed by bidders to RFP No.

250000000142, asking how the State can proceed with the current RFP (RFP No.

250000000142) while litigation is pending against RFP No. 230000000685, (see *e.g., #*

61 and 164),  including, but not limited to numerous other questions concerning the

Defendant's clear intent to circumvent or violate Michigan statutory laws, suggests that

the public interest in the procurement process would be best served by a stay.

(Proposal questions attached hereto as Exhibit C). Thus, public interest would be

served by the review, clarity and determination of those aspects of the Management

and Budget Act of 1984 and the Michigan Procurement Policy Manual (MPPM), which

permit or require consideration of public procurement policy as expressed by the State.

## V. CONCLUSION

1) The Plaintiff has not adequate remedy at law because:

    a. The extraordinary remedy sought by Preliminary Injunction and TRO in the
       Court of Claims have not been timely adjudicated;

    b. The extraordinary remedy sought by Preliminary Injunction and TRO in the
       Court of Claims have proved to be ineffectual;

  c. The damages that have been and will be sustained by LG-Solutions Unlimited are not susceptible to monetary determination;

2) Plaintiff alleges on information and belief, that the above-mentioned acts of Defendants in the applicability and enforcement of its Statutory Laws and Administrative Procedures,  is the result of one or more Defendants clear intent to abrogate those Statutory Laws and Administrative Procedures.

3) Plaintiff further alleges that Defendant, its agents, employees, officers, acting under color of State law, have acted in such a manner as to prevent Plaintiff from exercising his rights provided by those State Statutory Laws and Administrative Procedures.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for a judgment as follows:

1) Determine and Declare that the DTMB does not have the right or authority to move forward with RFP No. 250000000142, until the rights and obligations of the Preliminary Injunction and/or TRO have been adjudicated;

2) Enjoining the Defendants, its agents, employees, officers, from proceeding with, or awarding a contact in response to RFP No. 250000000142;

3) Any other relief as the Plaintiff may be entitled to, in accordance with equity and good conscience;

4) Such other and further relief as the Court deems just and proper;

5) For the costs of this action.

Date: February 18, 2025

/s/ Avery J. Bradley
Avery J. Bradley, *esq.* (P33630)
BRADLEY LAW CENTER, PLLC
Attorney for LG-Solutions Unlimited, LLC
200 w. 2nd St., P.O. Box 298
Royal Oak, MI 48068-0298
(313)962-6020
Email: ajblawfirm@yahoo.com

# PROOF OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with

the Clerk via CM/ECF this 18th day of February 2025 and was served on all counsel of

record via CM/ECF, MiFILE kitzmillert@michigan.gov, jamisone@michigan.gov,

spagnuolol1@michigan.gov.

/s/ Avery J. Bradley
Avery J. Bradley, *esq.* (P33630)
BRADLEY LAW CENTER, PLLC
Attorney for LG-Solutions Unlimited, LLC
200 w. 2nd St., P.O. Box 298
Royal Oak, MI 48068-0298
(313)962-6020
Email: ajblawfirm@yahoo.com

**IN THE**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

## INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Register of Actions, Court of Claims |
| B | Proposal Instructions, excerpt 1 of 84 |
| C | Proposal questions (RFP No. 250000000142) |

# EXHIBIT A

| STATE OF MICHIGAN<br><br>COURT OF CLAIMS | REGISTER<br>OF<br>ACTIONS | CASE ID<br>24-000135-MZ<br><br>C/COC/MI | Public<br>2/18/2025<br>10:01:24 AM<br>Page: 1 of 3 |
|---|---|---|---|

## CASE

| Judicial Officer | Date Filed | Adjudication | Status |
|---|---|---|---|
| REDFORD, JAMES | 8/21/24 | | OPEN |

## PARTICIPANTS

| | | |
|---|---|---|
| PLAINTIFF 1 | LG-SOLUTIONS UNLIMITED LLC | FILED: 8/21/24 |
| | ATTY: AVERY J. BRADLEY  # 33630  PRIMARY RETAINED | |
| DEFENDANT 1 | MICHIGAN DEPARTMENT OF TECHNOLOGY, MANAGEMENT AND BUDGET | FILED: 8/21/24 |
| | ATTY: TYLER R KITZMILLER  # 86684  PRIMARY RETAINED | |
| DEFENDANT 2 | MICHIGAN STATE POLICE | FILED: 8/21/24 |
| | ATTY: TYLER R KITZMILLER  # 86684  PRIMARY RETAINED | |

## RECEIVABLES/PAYMENTS

| | Assessed | Paid/Adjusted | Balance |
|---|---|---|---|
| PTF 1 LG-SOLUTIONS UNLIMITED LLC | $255.00 | $255.00 | $0.00 |
| | Assessed | Paid/Adjusted | Balance |
| DEF 1 MICHIGAN DEPARTMENT OF TECHNOLOGY, MANAGEMENT AND | $20.00 | $20.00 | $0.00 |

## CHRONOLOGICAL LIST OF ACTIVITIES

| Activity Date | Activity | | User | Entry Date |
|---|---|---|---|---|
| 8/21/24 | SUMMONS AND COMPLAINT | $175.00 | amd<br>amd | 8/22/24<br>8/22/24 |
| | PTF 1 | | | |
| | DEF 1 | | | |
| | DEF 2 | | | |
| 8/21/24 | JUDICIAL OFFICER ASSIGNED TO REDFORD, JAMES ROBERT  38462 | | amd | 8/22/24 |
| 8/21/24 | RECEIVABLE  ELECTRONIC FILING SYSTEM FEE | $25.00 | amd | 8/22/24 |
| 8/21/24 | RECEIVABLE  FILING FEE | $150.00 | amd | 8/22/24 |
| 8/22/24 | PAYMENT | $175.00 | amd | 8/22/24 |
| | RECEIPT NUMBER: COC-LAN.0007863 | | | |
| | METHOD: ELECTRONIC FUND TRANSFER  $175.00 | | | |
| 8/23/24 | SUMMONS ISSUED | | amd | 8/23/24 |
| 8/26/24 | ORDER TO SHOW CAUSE | | amd | 8/26/24 |
| | PTF 1 | | | |
| | DEF 1 | | | |
| | DEF 2 | | | |
| 8/27/24 | FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF | | amd | 8/27/24 |
| | PTF 1 | | | |
| 9/10/24 | APPEARANCE | | amd | 9/10/24 |
| | DEF 1 | | | |
| | DEF 2 | | | |
| 9/10/24 | APPEARANCE | | amd | 9/10/24 |
| | DEF 1 | | | |

| STATE OF MICHIGAN COURT OF CLAIMS | REGISTER OF ACTIONS | CASE ID 24-000135-MZ C/COC/MI | Public 2/18/2025 10:01:24 AM Page: 2 of 3 |
|---|---|---|---|

| Activity Date | Activity | | User | Entry Date |
|---|---|---|---|---|
| | DEF 2 | | | |
| 9/10/24 | RETURN OF SERVICE - NONPERSONAL | | amd | 9/10/24 |
| | DEF 2 | | | |
| 9/10/24 | RETURN OF SERVICE - NONPERSONAL | | amd | 9/10/24 |
| | DEF 1 | | | |
| 9/30/24 | MOTION FOR SUMMARY DISPOSITION | $20.00 | ank amd | 9/30/24 10/1/24 |
| | PTF 1 | | | |
| 9/30/24 | RECEIVABLE  MOTION FEE | $20.00 | ank | 9/30/24 |
| 9/30/24 | MOTION FOR SUMMARY DISPOSITION | $20.00 | ank amd | 9/30/24 10/17/24 |
| | DEF 1 | | | |
| | DEF 2 | | | |
| 9/30/24 | RECEIVABLE  MOTION FEE | $20.00 | ank | 9/30/24 |
| 10/1/24 | PAYMENT | $20.00 | amd | 10/1/24 |
| | RECEIPT NUMBER: COC-LAN.0007953 | | | |
| | METHOD: ELECTRONIC FUND TRANSFER  $20.00 | | | |
| 10/7/24 | RESPONSE TO DEFENDANTS' 9/30/24 MOTION FOR SUMMARY DISPOSITION | | ank | 10/7/24 |
| | PTF 1 | | | |
| 10/10/24 | REPLY BRIEF IN SUPPORT OF 9/30/2024 MOTION FOR SUMMARY DISPOSITION | | ank | 10/10/24 |
| | DEF 1 | | | |
| | DEF 2 | | | |
| 10/10/24 | RESPONSE TO PLAINTIFF'S 9/30/2024 MOTION FOR SUMMARY DISPOSITION | | ank | 10/10/24 |
| | DEF 1 | | | |
| | DEF 2 | | | |
| 10/17/24 | PAYMENT | $20.00 | amd | 10/17/24 |
| | RECEIPT NUMBER: COC-LAN.0007991 | | | |
| | METHOD: ELECTRONIC FUND TRANSFER  $20.00 | | | |
| 10/30/24 | MOTION FOR EVIDENTIARY HEARING | $20.00 | ank ank | 10/30/24 10/30/24 |
| | PTF 1 | | | |
| 10/30/24 | RECEIVABLE  MOTION FEE | $20.00 | ank | 10/30/24 |
| 10/30/24 | PAYMENT | $20.00 | ank | 10/30/24 |
| | RECEIPT NUMBER: COC-LAN.0008016 | | | |
| | METHOD: ELECTRONIC FUND TRANSFER  $20.00 | | | |
| 10/30/24 | MOTION AND PROPOSED ORDER FOR DISCOVERY | | ank | 10/30/24 |
| | PTF 1 | | | |
| 10/30/24 | RECEIVABLE  MOTION FEE | $20.00 | ank | 10/30/24 |
| 10/30/24 | PAYMENT | $20.00 | ank | 10/30/24 |
| | RECEIPT NUMBER: COC-LAN.0008017 | | | |
| | METHOD: ELECTRONIC FUND TRANSFER  $20.00 | | | |
| 11/12/24 | RESPONSE TO PLAINTIFF'S 10/28/2024 MOTION FOR EVIDENTIARY HEARING | | ank | 11/13/24 |
| | DEF 1 | | | |

| STATE OF MICHIGAN COURT OF CLAIMS | REGISTER OF ACTIONS | CASE ID 24-000135-MZ C/COC/MI | Public 2/18/2025 10:01:24 AM Page: 3 of 3 |
|---|---|---|---|

| Activity Date | Activity | | User | Entry Date |
|---|---|---|---|---|
| | DEF 2 | | | |
| 11/12/24 | RESPONSE TO PLAINTIFF'S 10/28/2024 MOTION FOR DISCOVERY | | ank ank | 11/13/24 11/13/24 |
| | DEF 1 | | | |
| | DEF 2 | | | |
| 11/20/24 | REPLY BRIEF TO DEFENDANT'S 11/12/2024 RESPONSE TO PLAINTIFF'S 10/28/2024 MOTION FOR DISCOVERY | | ank ank | 11/20/24 11/20/24 |
| | PTF 1 | | | |
| 1/9/25 | MOTION FOR TEMPORARY RESTRAINING ORDER | $20.00 | ank ank | 1/9/25 1/9/25 |
| | PTF 1 | | | |
| 1/9/25 | RECEIVABLE  MOTION FEE | $20.00 | ank | 1/9/25 |
| 1/9/25 | PAYMENT | $20.00 | ank | 1/9/25 |
| | RECEIPT NUMBER: COC-LAN.0008132 | | | |
| | METHOD: ELECTRONIC FUND TRANSFER  $20.00 | | | |
| 1/22/25 | RESPONSE TO PLAINTIFF'S 01/08/2025 APPLICATION FOR TEMPORARY RESTRAINING ORDER | | ank | 1/22/25 |
| | DEF 1 | | | |
| | DEF 2 | | | |
| 1/27/25 | REPLY BRIEF TO DEFENDANT'S 01/22/2025 RESPONSE TO PLAINTIFF'S 01/08/2025 APPLICATION FOR TEMPORARY RESTRAINING ORDER | | ank | 1/27/25 |
| | PTF 1 | | | |

# EXHIBIT B



STATE OF MICHIGAN
PROCUREMENT
Michigan.gov/MiProcurement

# PROPOSAL INSTRUCTIONS

**Department of Technology Management and Budget- Central Procurement Service**

**Statewide Towing Dispatch and Services- Michigan State Police (MSP)
Request for Proposal No. 250000000142**

Solicitation Manager Name: Valerie Hiltz
Direct Phone: 517-249-0459
Email: hiltzv@michigan.gov
Main Phone: 1-855-MI-PURCH 1-855-647-8724

**This is a Request for Proposal (RFP) for:**
**Towing Dispatch Services to be utilized by the MSP anywhere in the state of Michigan.**

NOTE:  Bidders are not allowed to own or operate any towing company, towing service, impound lot, body shop, or any other towing-related entity within the State of Michigan.  See Conflict-of -Interest Attestation attached to this solicitation.

**RFP Timeline**

| Event | Time | Date |
|---|---|---|
| **RFP issue date** | N/A | Thursday, December 19, 2024 |
| **Pre-proposal meeting** | 1:00 p.m. Eastern | Monday, January 13, 2025 |
| **Deadline for bidders to submit questions about this RFP** | 3:00 p.m. Eastern | Thursday, January 16, 2025 |
| **Anticipated date the State will post answers to bidder questions on www.michigan.gov/SIGMAVSS** | N/A | Tuesday, January 21, 2025 |
| **Proposal deadline\*** | 3:00 p.m. Eastern | Wednesday, January 29, 2025 |
| **Anticipated contract begin date** | N/A | Tuesday, April 1, 2025 |

**\*A bidder's proposal received at 3:00:01 p.m. Eastern is late and subject to disqualification.**

This RFP is subject to change. Check www.michigan.gov/SIGMAVSS for current information.



# PROPOSAL INSTRUCTIONS

**Department of Technology Management and Budget- Central Procurement Service**

**Statewide Towing Dispatch and Services- Michigan State Police (MSP)**
**Request for Proposal No. 250000000142**

Solicitation Manager Name: Valerie Hiltz
Direct Phone: 517-249-0459
Email: hiltzv@michigan.gov
Main Phone: 1-855-MI-PURCH 1-855-647-8724

**This is a Request for Proposal (RFP) for:**
**Towing Dispatch Services to be utilized by the MSP anywhere in the state of Michigan.**

NOTE: Bidders are not allowed to own or operate any towing company, towing service, impound lot, body shop, or any other towing-related entity within the State of Michigan. See Conflict-of -Interest Attestation attached to this solicitation.

**RFP Timeline**

| Event | Time | Date |
|---|---|---|
| **RFP issue date** | N/A | Thursday, December 19, 2024 |
| **Pre-proposal meeting** | 1:00 p.m. Eastern | Monday, January 13, 2025 |
| **Deadline for bidders to submit questions about this RFP** | 3:00 p.m. Eastern | Thursday January 16, 2025 |
| **Anticipated date the State will post answers to bidder questions on** www.michigan.gov/SIGMAVSS . | N/A | Wednesday January 29, 2025 |
| **Proposal deadline\*** | 3:00 p.m. Eastern | Thursday February 6, 2025 |
| **Anticipated contract begin date** | N/A | Tuesday April 1, 2025 |

**\*A bidder's proposal received at 3:00:01 p.m. Eastern is late and subject to disqualification.**

This RFP is subject to change. Check www.michigan.gov/SIGMAVSS for current information.



# PROPOSAL INSTRUCTIONS

**Department of Technology Management and Budget- Central Procurement Service**

**Statewide Towing Dispatch and Services- Michigan State Police (MSP)**
**Request for Proposal No. 250000000142**

Solicitation Manager Name: Valerie Hiltz
Direct Phone: 517-249-0459
Email: hiltzv@michigan.gov
Main Phone: 1-855-MI-PURCH 1-855-647-8724

**This is a Request for Proposal (RFP) for:**
**Towing Dispatch Services to be utilized by the MSP anywhere in the state of Michigan.**

NOTE: Bidders are not allowed to own or operate any towing company, towing service, impound lot, body shop, or any other towing-related entity within the State of Michigan. See Conflict-of -Interest Attestation attached to this solicitation.

**RFP Timeline**

| Event | Time | Date |
|---|---|---|
| RFP issue date | N/A | Thursday, December 19, 2024 |
| Pre-proposal meeting | 1:00 p.m. Eastern | Monday, January 13, 2025 |
| Deadline for bidders to submit questions about this RFP | 3:00 p.m. Eastern | Thursday January 16, 2025 |
| Anticipated date the State will post answers to bidder questions on www.michigan.gov/SIGMAVSS . | N/A | Wednesday February 12, 2025 |
| Proposal deadline* | 3:00 p.m. Eastern | Thursday February 20, 2025 |
| Anticipated contract begin date | N/A | Tuesday April 1, 2025 |

**\*A bidder's proposal received at 3:00:01 p.m. Eastern is late and subject to disqualification.**

This RFP is subject to change. Check www.michigan.gov/SIGMAVSS for current information.

# EXHIBIT C

## STATE OF MICHIGAN

**RFP 25000000142**

**Statewide Towing Dispatch and Services- MSP**

Questions Due: January 16, 2025

Anticipated date the state will post answers to bidders questions: February 12, 2025

First Round Answers Provided:  January 14, 2025

| Quest. # | Document & Section | Page # | Bidder Question | State's Response |
|---|---|---|---|---|
| 1 | General | N/A | Is there an approximate cost the state would be paying a winning bidder for this RFP? I know a prior RFP for this third-party towing management for a smaller portion of the state was $750,000. | The cost to the State will be nothing.  All costs will be paid by Michigan citizens. See **Schedule A, Statement of Work, Section 1.1.B.8)**, Section **7.1. Invoice Requirments**, and Section **7.3. Payment and Methods**.  Contract value will be estimated based on Bidders quoted rates.  Citizens will be charged the same rated quoted, based on district, regardless of which Service Provider is dispatched. |
| 2 | General | N/A | What is the anticipated value of tows/dispatches requested by MSP in each region? | Total volume of Dispatched Services in 2024 were 27,207.  See Revised **Schedule B Pricing Worksheet and Usage Data** document provided with Addendum 1.  The State can not and will not guarantee volume for this contract. |
| 3 | Schedule B- Pricing Worksheet | N/A | In the pricing worksheet you are asking for all different fees for each zone: a.Does the vendor set these fees? b.Does the state / MSP set these fees? c.Are these fees set by the local jurisdictions? d.Where do we enter our system management fees? | Contractor sets contract fees based on provider costs, administration (overhead) and profit).  See Revised **Schedule B- Pricing Worksheet** tab and the added **Table 2**.  Bidders will be required to enter percentage breakdown of the fees they are proposing. |
| 4 | Schedule B- Pricing Worksheet | | Does MSP use any roation scheme in any of the zones? | The Contractor will be required to determine their rotation scheme, bearing in mind that they will always dispatch from the nearest Provider whenever possible. |
| 5 | Schedule B- Pricing Worksheet | | Can we get a boundary map of each district? | See **Schedule F** published with this RFP. |
| 6 | General | | Can we get a list of current towers in each district? | The State does not have this information.  See Revised **Schedule B- Pricing Worksheet and Usage Data, Historic Data**, tab for location information, per ADM 1. |
| 7 | Schedule B- Pricing Worksheet | | With regard to pricing, how will you address that Heavy Duty recovery which is very difficult to forecast with set amounts? * Example Scenarios: * Water Recovery * Semi Rollover with Hazardous Materials * Multi-Vehicle Pile Up | The Contractor will have the reasonable ability to quote rates for services, events, and circumstances.  See Revised **Schedule B- Pricing** per ADM 4. |

| | | | | |
|---|---|---|---|---|
| 8 | | | This RFP doesn't address MCL law 257.252(a) for Abandoned Vehicles, however it clearly states on pg. 42 Item 4a. that the contractor should follow all laws from MCL law 257.1 to mcl 257.923. which includes the abandoned vehicle law listed above.  This law clearly defines that the custodian of the vehicle must collect the $40.00 abandoned vehicle fee for the State of Michigan.  The state has defined the custodian of the vehicle as the entity that has the vehicle in it's custody. The RFP requires a 3rd party contractor to collect fees without physically having custody of the vehicle. How does this RFP address this conflict? | Nothing in this RFP is intended to or will superceed applicable law or regulations. The State will not provide legal guidance. Abandoned Vehicle disposition and procedures are handled outside of this contract. See Revised **Schedule A, Section 1.1.C.** per ADM 2. |
| 9 | | | This RFP doesn't address MCL law 257.252(a) for Abandoned Vehicles, however it clearly states on pg. 42 Item 4a. the contractor should follow all laws from MCL law 257.1 to mcl 257.923.  MCL law 257.252(a) for Abandoned Vehicles spells out that the Police Department and the Towing company must respond to civil court in the event a charge or fee is contested. This is also stated on state form TR-52L. The RFP specifies that the third party contractor must handle disputes between the public and towing companies. A quote from the law "if the court finds, after a hearing on reasonableness of the towing fee and daily storage fees, that the owner(s) or the secured party's challenge was frivolous, the court may award reasonable attorney fees to the custodian of the vehicle". The requirements as stated in the RFP, and the requirements laid out in the law seem to conflict. Can you explain how both requirements are expected to be met? | See Response to Question 8 |
| 10 | Schedule A, Section E (Now Section F) | 45 | The RFP on pg. 45 #E states that MSP will not be involved with disputes between service providers and vehicle owners. MCL 257.252(a) states that in court under the provision of this state law the police agency must respond to the civil summons and state why the vehicle was towed away from owner as part of the case of proofs. This is also stated on state form TR-52L. How will you address this issue? | Nothing in this RFP is intended to or will superceed applicable law or regulations. The State will not provide legal advice.See Revised **Schedule A, Section 1.1.F** per ADM 2 |
| 11 | | | MCL 257.252(a) also addresses private property tows with consent of the property owner to have a towing company of their choice remove the vehicle and this must be within 15 miles of the police agency. How will this be addressed by the RFP? | Nothing in this RFP is intended to or will superceed applicable law or regulations. The State will not provide legal guidance. |

| | | | | |
|---|---|---|---|---|
| 12 | | | The state mandated abandoned fee of $40 must be collected. $25 goes to the state of Michigan and $15 goes to the towing company. The $25 that the state collects is turned over to the state through the Tow Trucks and Vehicle Custodians website (https://dsvsesvc.sos.state.mi.us/TAP/_/#1 ). MCL 257.252(a) references a custodian as the entity holding possession of the vehicle. The law is clear that the tower has to be paid their fees. Fees can include inspection of vehicle ($75.00) and TR-52L ($40.00). The law seems to conflict with the RFP requirement stating that payments cannot be made directly from the vehicle owner to the towing company. This RFP has the towers under contract with a third party, while holding possession of the vehicle. Based on the RFP, payment will be made to the contractor, not the custodian of the vehicle. Can you explain how the RFP will operate within the current state law? | See Response to Question 8 |
| 13 | | | On average, 15%-25% of vehicles impounded by MSP will not be redeemed by the owner or the secure party. Based on the towing volume in 2024 this would amount to at least 5,000 towed vehicles (based on 15% rate of abandonment) which would be processed using the abandoned auto law 257.252(a). The RFP and law 257.252(a) conflict, leaving these vehicles without a clear process. Can you address an expectation of how these vehicles will be handled? | See Response to Question 8 |
| 14 | | | The police department(s) by law are mandated to enter vehicles deemed abandoned in the SOS through LEIN. A third party contractor cannot complete this entry. We will be reporting impound information to MSP.  How are you planning on reporting back to towers and handling the TR-52L forms with towers after they have expired, and a new title is issued? | MSP will follow currently established workplace policy and report back to the Wrecker/Tower Service Provider. Nothing in this RFP is intended to or will supercced applicable law or regulations. |
| 15 | | | Law Enforcement is required to be involved in the auction process. How will that be handled? | See Response to Question 8 |
| 16 | | | The state is responsible for notifying the vehicle owner and the last secured party that their vehicle was towed and is impounded by a towing company that has been deemed abandoned. The state form (TR-52L) lists the police department that ordered the tow, and the address for the towing company with specific instructions on how to have their vehicle released. How will the contractor manage this process? | This task is not part of this RFP scope. |
| 17 | | | The above questions spell out the RFP is already not in compliance with existing state law. The RFP, as stated on pg. 37 #42 requires compliance with existing state and federal law. How will the conflicts spelled out above be addressed? | The TR-52 process remains in effect under this RFP. Nothing in this RFP is intended to or will supercced applicable law or regulations. |

| | | | | |
|---|---|---|---|---|
| 18 | | | Will the state motor carrier division certify the towers that are contracted to meet the requirements spelled out in the RFP? | See Revised **Schedule A, Section 1.1.B.3).d.** per ADM 2. |
| 19 | | | How do you handle heavy and medium tows? | See Response in Question 7. |
| 20 | | | How do you handle towing of boats? | See Response in Question 7. |
| 21 | Hybrid Terms, Section 28 | | This contract is a large commitment of capital and resources in order to perform this contract. Yet Section 28 of the contract says it can be terminated for convenience at any time as a result of a lack of funding or if the funds are not appropriated. Which Senate or House Committee will appropriate the funds for this contract? Please identify whether adequate funds or an adequate appropriation have been made to pay for this contract? How much is the State or MSP allocating for the funding for this contract? | The State is not allocating any funds to this contract. The work on this contract is being paid by the service fees charged to vehicle owners. |
| 22 | Schedule A, Section B | 43 | If a proposal contains only an administrative fee for each tow assessed solely to the citizen (and nothing else), the State pays nothing and so would this contract require approval of the State Administrative Board (it would be $0 so under the $250k)? At the Pre-Proposal conference DTMB stated that this contract requires approval by the State Administrative Board but under this approach, the State pays zero? | Yes, this contract will require approval of the State Administrative Board. The contract's value will be well in excess of $250,000.00. The State will be auditing the amount paid to the Contractor, and the contractor must accurately report. See revised **Schedule A, Section 4.3.B. Annual Sales/Service Report.** |
| 23 | Schedule A | 43 | Schedule B contains no fee structure for the towing and recovery of heavy-duty vehicle and the other actions that must be performed when towing a heavy-duty vehicle. | The contractor is free to quote additional rates in Schedule B, including for heavy-duty fees. See Revised **Schedule B- Pricing** per ADM 4. |
| 24 | Vendor Questions Worksheet- Section 2 | 13 | If a Contractor has not been "debarred, suspended or disqualified" from bidding but has had a similar (towing management software) pilot-program terminated or shut down by another state's law enforcement agency, where must that be disclosed? Must it be disclosed in response to this question at p. 13? | Disclosure is not necessary. |
| 25 | Schedule A, Section 1.1., B.1) and2) | 42 | What rules or standards are Contractors use to select and choose vendors and develop how the service providers must fuction: must Contractors use Order 48 (available online) or some other guidelines established by MSP? | MSP will not be providing guidelines to the Contractor on how to select and choose vendors outside of the requirements set forth in this RFP. |
| 26 | Schedule A, Section 7 | 43 | If a fee is charged per towing transaction (and added to each citizen's invoice and paid by the citizen), does it matter whether it is termed or called an "administrative fee" or "management fee"? Neither of these fees are prohibited, correct? | See Revised **Schedule B- Pricing** per ADM 4. Nothing in this RFP is intended to or will superceed applicable law or regulations. |
| 27 | Schedule A, Section 7 | 43 | For vehicles deemed abandoned, a $40 fee must be paid by the owner as a matter of state law. Currently, service providers collect and pay this fee to the State of Michigan. Does the RFP require a change in this requirement by making the Contractor collect and remit a portion of the fee to the State of Michigan? The RFP is silent. | See Response to Question 8 |

| 28 | Schedule A, Section 1.1., B., 3) & 4) | 43 | In the event there are issues with Service Providers, are there any rules or system of progressive discipline the MSP requires the Contractor to use with respect to (e.g., discipline, fined, suspended, etc.) Service Providers? | MSP will not be providing guidelines to the Contractor on how to deal with issues with service providers. |
|---|---|---|---|---|
| 29 | Schedule A, Section 1.4. | 47 | Must a bidder's access, use and disposal of information contained or received in any LEIN and/or NCIC extract (or extract thereof) under this contract meet the standards outlined in the federal CJIS Security Policy, the Michigan CJIS Security Policy and the CJIS Policy Council Act, 1974 PA 163? | Yes, if that access is required and allowed. Nothing in this RFP is intended to or will superceed applicable law or regulations. The State will not provide legal guidance. |
| 30 | Schedule A, Section B, 3) & 4) | 42-43 | In addition to the standards established by the MSP, is the Contractor tasked with developing additional rules and standards governing the Service Providers and towing and recovery of vehicles under this RFP, rather than MSP? | Yes, however all Service Providers must have proper licencing as well meet any other standards required by law. See Revised Schedule A, Section 1.1.3.d. |
| 31 | Schedule A, Section 7 | 43 | Official Order 02-17-1 (Wrecker Administrative Fees) establishes MSP policy providing that a MSP post or any worksite (thus, the MSP) shall not profit from the towing of any vehicle. The Order prevents the receipt of any administrative fee or other cost outside of a dollar-for-dollar costs reimbursement for expenses paid in advance by the post, MJTF or other worksite in conjunction with the towing of a seized vehicle (excludes forfeiture, court ordered, etc.). Doesn't this Order conflict with the terms of the RFP since the MSP/State is receiving fees (e.g., a profit with no investment) from the Contractor? | No.  Your administative costs are to be included as part of the fees you are charging the Vehicle Owners to recoup your outlay.  No funds being paid to the State. |
| 32 | Vendor Question Worksheet (VQW), Section 14 | 15 | At the Pre-Proposal Conference, DTMB directed every bidder to put not applicable in response to whether a bidder consulted with DTMB because she stated that she drafted the RFP and worked with no one. Bu tsuch a comment or answer is only partly accurate and completely ignores the obvious: if a bidder consulted with MSP in reviewing its products/services so that the MSP could use same to develop this RFP, must this be disclosed in Section 4? Will the RFP be amended to require any bidder that previously consulted with MSP since 2022 to disclose this fact and the facts of same? Fairness and transparency require this. | The State did not seek consultation with any non-state entities to assist in the creation of this RFP. |
| 33 | Hybrid Terms, Section 16 | 26-27 | The Contract requires a fingerprint background check of all of the Contractor's employees and subcontractors. But are fingerprint background checks required to be performed of each of the Service Providers' employees and subcontractors (as Service Providers are referred to as subcontractors in the RFP)? | Per this section it says "upon request". |

| 34 | Hybrid Terms, Section 16 | 26-27 | Schedule A, Sec. B 3&4 Pg. 42 Are any crimes that a Contractor MUST prevent a Service Provider employee from being able to perform services at a MSP towing scene under this contract? Examples: auto theft, VIN alteration, domestic violence, drugs, felony within the last 7-10 years, etc. Please advise. | Background checks will be performed per Public Act 427 of 2018 if requested by the State or as the Contractor deems necessary. Reasonable crimes related to service of this contract could be a reason for the Contractor to preclude individuals from performing work under this contract. |
|---|---|---|---|---|
| 35 | Schedule A, Section 1.1 B. 8, and E (Now F) | 43 and 45 | If as a Contractor, it can totally manage the operation, can it implement a policy that requires all complaints by citizens against Service Providers regarding the propriety of the tow or the reasonableness of the fees be first submitted to arbitration or mediation? | The bidder is asked to address this in the response boxes included under Revised **Schedule A, Section 1.1.F** per ADM 2. |
| 36 | Vendor Questions Worksheet, Section 4. | 13 | If a bidder has not been "debarred, suspended or disqualified" from bidding but has had a similar (towing management software) pilot-program terminated or shut down by another state's law enforcement agency, where must that be disclosed? Must it be disclosed in response to this question at p. 13? | See Response to Question 24. |
| 37 | VQW, Section 4 | 15 | If a bidder, an employee, agent or representative of a bidder such as a lobbyist or senior personnel, previously provided (within the last five years) a demonstration of its towing management system to members of the MSP, is that considered "participating in developing any component" of the RFP? | No. |
| 38 | VQW, Section 4 | 15 | Same question as No. 3 but does the answer change (irrespective of whether the MSP or DTMB utilized or purchased the towing management solution), if the general requirements of the RFP (from a technological basis) appear remarkably similar to the essential operating functionality of one towing management system? Is that considered "participating in developing any component" of the RFP? | No. See Response to Question 32. |
| 39 | VQW, Section 4 | 15 | In the interest of transparency and fairness, will the MSP and/or DTMB publicly disclose the identity of all companies, entities or individuals who made presentations or demonstrations of towing management solutions/systems to the MSP and/or DTMB within the last five (5) years? | This information is obtainable through a FOIA request, unless the information requested is subject to an exemption from disclosure, in accordance with applicable law. |
| 40 | VQW, Section 2 | 13-14 | With respect to Section 2 at p. 12, does a majority investment (e.g., control transaction) by a private equity firm in a bidder require disclosure? | Yes. |

| 41 | VQW, Section 4 | 15 | What are the Contractor's responsibilities to interface with and share information with the Michigan Department of Transportation ("MDOT")- Emergency Road personnel as part of the scope of work (it 4 is undefined; please clarify)? Must MDOT personnel be given remote access (or a license) to the bidder's towing management system? | That is not required as part of this RFP. |
|----|----------------|----|---------------------------------|------------------|
| 42 | VQW, Section 4 | 15 | Please clarify whether MDOT personnel participated in developing any component of the RFP? If not, why? | No. |
| 43 | Schedule A, Section C. | 44 | Can a bidder operate a call center to handle customer inquiries (both MSP and citizen) physically located outside of the State of Michigan? Or must it be located somewhere within the Second District? | The call center may be located anywhere inside of the United States. |
| 44 | Schedule A, Section 3.2? | 55-56 | If a bidder can operate a call-center outside of Michigan to handle customer inquiries (both MSP and citizen), can it be staffed with Returning Citizens (a/k/a convict labor) from another state to perform any work required by this proposal? | The only restrictions on this are in the RFP and state and federal law. |
| 45 | VQW, Section 11 | 18 | If a bidder does not have 100 or more employees and is therefore not required to file an EEO-1 report, will the MSP or State of Michigan Office of Civil Rights require any type of report be filed? | It is unclear what is intended to be included as "another type of report"  However, for clarity, the State does not anticipate any reporting requirements, other than those expressly required under the terms of any resulting contract, applicable law, or regulation. |
| 46 | VWQ, Section 9 | 18 | If a bidder's platform is entirely cloud-based and maintains a "click-through" presence or an economic nexus, and nearly all transactions are performed online, will the bidder be subject to Michigan use and/or sales tax? | Yes. All invoicing is made to the Vehicle Owners and are not Michigan Sales tax exempt. |
| 47 | Proposal Instructions, Section 7 | 5 | The RFP (Section 7 at p. 5) provides that the "State" will evaluate the responses but what is the number of individuals that comprise the evaluation team and from what State departments are they derived? | To Be Determined |
| 48 | VQW, Section 11 | 18 | This RFP does not require any  specific portion of the towing management technological solution be performed by minority-owned businesses or otherwise include provisions for the accommodations of subcontracts and joint ventures to minority owned businesses contrary to MCL 450.772? Will this be amended to match other like projects and comply with MCL 450.771 et seq.? | Nothing in this RFP is intended to or will superceed applicable law or regulations. The State will not provide legal guidance. |

| 49 | Schedule A, Section 1.1.2 | 40 | Will the use of the a GPSenabled "closest wrecker" system be determined from the wrecker company's physical building location within a District to the incident or tow scene or literally from whichever wrecker of authorized providers is closest? (Example: Company A has headquarters on 8 Mile Rd. and Gratiot in Detroit; overturned semi on 94 at Cadieux; does the MSP desire the system find/dispatch the closest wrecker from Company A's location (which is the closest company) or is it the closest wrecker between Company A 5 (Truck 54) and Company B (Truck 195) both of which are in the area near 94 and Moross)? Please advise. | That will be up to the Contractor to determine when implementing their system.  See Revised Schedule A, Section 1.1.A. 4) per ADM 4. |
| 50 | VQW, Section 11 | 18 | Can a bidder hire or utilize Returning Citizens (a/k/a convict labor)(for technological work) in Michigan to perform work required by this proposal? | See Response in Question 44. |
| 51 | Schedule E, Section 5 | 52 | Whether Hosted Services are provided by the bidder or by a Hosting Provider (assuming that each has FedRamp authorization), must both disclose any prior breaches or intrusions of data privacy and/or information security programs on similar or like projects, as there does not appear to be any required disclosures of known or discovered system vulnerabilities? | Yes. |
| 52 | Section 7 | 5 | If a system possesses the data replication to a transaction in extremely short intervals as a Recovery Time Objective (RTO) (which blisters the competition), will a bidder be awarded or scored extra or additional points? | This would be a best value consideration and would be taken into consideration until after technical evaluation has been concluded. |
| 53 | Schedule A, Section 1.1. | 22 | If the 24/7 customer support is web-based, can it be an artificial intelligence (AI) application or program (or bot) to answer questions or must it be a live-person in the event a question cannot be answered by the web-based support? | It must be answered by a live person. |
| 54 | Schedule B- Pricing Worksheet | | There are absolutely no distinctions being made for the towing or recovery of different classes of vehicles? Why are there no distinctions of rates for Class A, B and C vehicles? | See Response to Question 23 |
| 55 | Schedule A, Section 1.1., B. | 43 | Will the contractor be expected to oversee police auctions? Can the auctions be conducted solely online? | See Revised **Schedule A, Section 1.1., C.** per ADM 2 |
| 56 | Schedule A, Section B., 1.1. | 42 | Is it possible for us to select the tow contractors if a bid is awarded? | Yes.  The Contractor will be responsible for creating the Roster of Wrecker/Towing Service Providers. |

| 57 | RFP | 1 | Why are bidders not allowed to own or operate a towing company, towing service, impound lot, body shop or any other towing -related enity within the State of Michigan.  What is difference if someone just outside the state line owns one of the above?  The Michigan Towing Association protests this RFP and in particular this requirement that exludes in state towers but allow neightboring state towers to bid. | This does not appear to be a question directed at understanding the provisions of the RFP.  The State will not provide legal guidance. |
|---|---|---|---|---|
| 58 | | | MCL 18.1261(1). The statute states "all other things being equal, preference shall be given to products manufactured or services offered by Michigan-based firms. ..."  It appears this RFP violates this statute. | This doesn't appear to be a quesiton.  The State will not provide legal guidance. |
| 59 | RFP | 1 | Define towing related enity | Any entity providing roadside/at scene services,  direct towing services, services tangential to towing,  impounding/ storage of vehicles, or body/repair shops. |
| 60 | RFP | 1 | Define towing service | Industry standard definition. |
| 61 | RFP | General | Why is a RFP being requested when prior RFP is still in litagation? | This RFP is the only active RFP proposed by the State, related to the provision of the services described in this RFP. |
| 62 | RFP 1.1A | 41 | Towers should be protected as to not being forced to violate Michigan law of operating a device while driving | This does not appear to be a question.  The State will not provide legal guidance. |
| 63 | RFP | 1 | Will towers dispatch centers receive an alert so drivers aren't required to break the law and interact with app while driving?  Dispatcher would use tow way radio to notify driver of call to conform with Michigan law. | This will be determined by the Contractor.  The State will not provide legal guidance. |
| 64 | RFP 1.1 | 41 | This provision would create a hazardous situation on Michigan roads.  Towers would be incentized to park trucks | This does not appear to be a question. |
| 65 | | | around accident seens and lead to accident chasing which is in violation of Michigan law.MCL 257.676c(2)(a) | This does not appear to be a question. |
| 66 | RFP 1.1B | 42 | How are rosters determined under what standards? What appeal process is there? | TBD by Contractor. |
| 67 | RFP 1.1B(1) | 42 | What prevents a roster spot from being obtained by unethical acts? | This does not appear to be a question designed at better understanding the provisions of the RFP.  However, to be clear, State and federal laws may be implicated by any unethical activity under any resulting contract. |
| 68 | RFP 1.1b(7) | 42 | How are fair and reasonable towing fees determined? | Fees are to be provided by Bidder in Schedule B and Schedule B- Pricing Worksheet |

| 69 | RFP 1.1 | 41 | This provision would create a hazardous situation on Michigan roads. Towers would be incentized to park trucks around accident seens and lead to accident chasing which is in violation of Michigan law.MCL 257.676c(2)(a) | This does not appear to be a question. |
|----|---------|-----|------|------|
| 70 | RFP 1.1B | 42 | How are rosters determined under what standards? What appeal process is there? | See Revised Schedule A, Section 1.1.,B. per ADM 2 |
| 71 | RFP 1.1B(1) | 42 | What prevents a roster spot from being obtained by unethical acts? | State and federal laws. |
| 72 | RFP 1.1b(7) | 42 | How are fair and reasonable towing fees determined? | See Response to Question 68 |
| 73 | RFP 1.1B(8) | 42 | Vehicle Owners have a duty under law to pay towers for their fees. Why does the RFP provide a means for state statue not being followed? This is a violation of Michigan Law and hte MTA protests this RFP as such. Vehicle owners and courts are required to send payments to towers/custonians not to third party vendors that are taking charging an additional fee to the vehicle owner. | This does not appear to be a question related to better understanding the provisions of this RFP. The State will not provide legal guidance. |
| 74 | RFP 1.1(B)(8) | 42 | 257.252a(14), 257.252a(15), 257.252a(17), 257.252b(9), 257.252b(10, 257.252e, 257.252F(3)(c) states that towing agencies must be paid by state if violation occurs in process of vehicle taken into custody. How does this proposal not violate this state statue? | The State will not provide legal guidance. |
| 75 | RFP 1.1(B)(8) | 42 | please explain how 257.252i is not violated under this section | The State will not provide legal guidance. |
| 76 | RFP 1.1(b)(8) | 42 | this is in violation of 257.618a(1)(7) The tower can't be precluded from not receiving payment from direct payments from vehicle owner | This does not appear to be a question. The State will not provide legal guidance. |

| | | | | |
|---|---|---|---|---|
| 77 | RFP 1.1. | 41 | 257.618a(1)(7) The owner or carrier, if any, of a motor vehicle, cargo, or personal property removed or disposed of under subsection (5) shall reimburse the public agency, departments, street railway, and towing companies, if any, for all documented reasonable costs incurred in that removal and disposal. MCL 257.252 authorizes a "police agency or a governmental agency designated by the police agency" to remove a vehicle from public or private property in the event of an accident or crime. When law enforcement summons a tower to the accident scene, the MSP, as the law enforcement agency, distances itself from all aspects of selecting authorized towers, establishing processes and procedures, setting prices, determining which wrecker to respond and all else to do with the towing process, the tower is working for, with and under the direction and authority of the Contractor, not MSP, and the authority and direction conferred by MCL 257.252d gets quite blurred. If a trooper on scene gives a direction to a tower contrary to an established Contractor procedure, who does the tower obey. Further, where does the right for the tower to be on scene come from, as that right comes from law enforcement through 257.252d and 257.676c. **And if something goes wrong because of conflicting Contractor policies and MSP directions, how is the tower shielded from liability for following one or the other?** | This does not appear to be a question related to better understanding the provisions of this RFP. The State will not provide legal guidance.  Nothing in this RFP is intended to or will superceed applicable law. |
| 78 | RFP | General | During performance of the contract, will the contractor be cosidered the towing agency, towing service or custodian under the Special Anit Theft Laws, MCL 257.252 et seq.? | The State will not provide legal advice. Nothing in this RFP is intended to or will superceed applicable law. |
| 79 | RFP 1.1.E. | 45 | How can a dispute process not involve the MSP when the work of the towing providers is for the MSP and the Program Managers are overseeing the day-to-day operation of the contract pursuant to Section 3.3? What standards, rules and regulations of the MSP can be used in the resolution of disputes between authorized towing providers? Can a bidder require the towing companies submit to arbitration? Does an appellate process have to be given to towers? | See Revised **Schedule A, Section 1.1.F** per ADM 2.  See Response to Question 35. |
| 80 | rfp 1.1d | 45 | Please provide additional information concerning the types of disputes that may arise between authorized towing providers. If there is no role for MSP in this process, what is the anticipated appeal process if the Contractor is unable to resolve the dispute. | See Response to Question 35. |

| | | | | |
|---|---|---|---|---|
| 81 | RFP | NONE | Section 1.1.1 of the RFP addresses the establishment of standards for towing operators. MSP Official Order #48, which set out the rules, regulations and requirements for towers providing service to MSP was ruled void by the Court of Claims in December, 2020, because those rules, regulations and requirements were not properly promulgated under the Administrative Procedures Act ("APA"). Will the standards (rules) established by the third party administrator, acting in the shoes of the MSP, be required to be properly promulgated under the APA? | Nothing in this RFP is intended to or will superceed applicable law or regulations. |
| 82 | RFP | NONE | If the Contractor is setting fees for towers, will those, as regulated fees, need to be properly promulgated through the APA? | The Contractor is not expected to "set" fees, but rather negotiate fees with the Service Providers that will be agreeable to all. Nothing in the RFP is intended to superceed applicable law or regulation. |
| 83 | RFP 1.1.B(1) | 42 | Is a Contractor going to be subject to the same restrictions imposed on unit of government from requiring a towing service to pay a fee for responding to the scene of an impound, accident, disabled vehicle or abandoned vehicle and providing towing services under MCL 257.676d(1)? And will towers be precluded by MCL 257.676d(2) from paying a fee to the contractor in order to induce the Contractor to put them on the towing list? As the Contractor is not a local unit of government, it would appear immune, and could require fees or accept inducements. How will that be dealt with? | The RFP does not require a Service Provider to pay a fee. Service Providers must not be required to pay a fee to be included on the Roster of Wrecker/Towing Service Providers. Nothing in this RFP is intended to or will superceed applicable law or regulations. |
| 84 | RFP | ENTIRE | MCL 257.676c(1) prohibits a person, including a tower, from traveling to the scene of a motor vehicle accident. MCL 257.676c(2)(a) provides an exception to a law enforcement agency or a tower requested to the scene by the vehicle owner. It assumes that law enforcement may summon a wrecker to the scene through subsection (3), but does not provide for a third party administrator acting independently. How will this be justified? | The Contractor will not be acting independently. Dispatch requests are sent to the Contractor by MSP to arrange the dispatch. Nothing in this RFP is intended to or will superceed applicable law or regulations. |
| 85 | RFP | General | Has MSP/DTMB reached out to other agency/committee partners both inside the State and outside the State? Has the Michigan Traffic Incident Management committee been consulted? | This does not appear to be a question related to better understanding the provisions of this RFP. |
| 86 | RFP 1.1.d. | 42 | How can the dispute process not involve MSP, when MSP is the authority at the accident scene and MCL 257.252d does not allow a law enforcement agency to delegate their authority to a third party, only to governmental agency designated by the police. | This does not appear to be a question related to better understanding the provisions of this RFP. The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed applicable law. |

| 87 | RFP 7.3 | 62 | How is this legal? 257.252F(3)(c) states that towing agencies must be paid by state if violation occurs in process of vehicle taken into custody. please explain how 257.252i is not violated under this section?  Explain how a towing service or custonian can be restricted from their rights under 257.252i(1) It states:  (1) A towing service, custodian of a vehicle, or both, shall not be precluded from the recovery of towing fees or, subject to subsection (2), storage fees from the last titled owner of a vehicle deemed abandoned under section 252a or section 252b, or removed under section 252d. this is in violation of 257.618a(1)(7)  The tower can't be precluded from not receiving payment from direct payments from vehicle owner 257.618a(1)(7) The owner or carrier, if any, of a motor vehicle, cargo, or personal property removed or disposed of under subsection (5) shall reimburse the public agency, departments, street railway, and towing companies, if any, for all documented reasonable costs incurred in that removal and disposal. This RFP seeks to violate 257.252g(2)(a) Accrued towing and storage charges. However, if the money received from the public sale does not satisfy the accrued towing and storage charges, the towing company may collect the balance of those unpaid fees from the last titled owner, subject to section 252i. The Michigan Towing Association protests the fact that money can't not be collected directly from the owner of the car.  Does this proposal, outsourcing to a third party violate state this statue? | This does not appear to be a question related to better understanding the provisions of this RFP. Nothing in this RFP is intended to or will superceed applicable law or regulations.  The State will not provide legal advice. |
| 88 | Schedule B (4) | 64 | Can Contractor meet with towers prior to proposal submission? | Yes |
| 89 | Schedule B (4) | 64 | Can Contractor meet with towers after proposal submission? | Yes |
| 90 | RFP | General | Has Incident Clear management had meetings with MSP regarding this proposal | This does not appear to be a question related to better understanding the provisions of this RFP. No third parties had input into the drafting of this RFP. |
| 91 | RFP 7 Evaluation Process | 5 | Who is Evaluting the bids specifically? | TBD.  This information will be disclosed in the Award Recommendation and Evaluation Synopsis. |
| 92 | RFP 10. Reservations | 6 | How can State consider number of Michigan citizens employed when it prohits many Michigan citizens from potentially placing a bid? | Nothing in this RFP precludes a Michigan based company from bidding, provided they do not financially gain from any dispatches, vehicle storage/impoundments or vehicle repairs, other than their admin fee/overhead and profit |
| 93 | Schedule B Pricing | Schedule B Pricing Schedule | How are rates determined by Contractor?  Is contractor allowed to meet with towers to discuss rates for proposal submission? | Rates are to be determined by the Contractor and yes, Contactor are free to determine rates in consulation with the potential Service Providers. |
| 94 | Schedule B Pricing | Schedule B Pricing Schedule | What about medium and heavy duty rates? | See Revised **Schedule B-Pricing** per ADM 4 |
| 95 | Schedule B Pricing | Schedule B Pricing Schedule | Clean up charges are not listed.  Why? | See Revised **Schedule B-Pricing** per ADM 4 |
| 96 | Schedule B Pricing | Schedule B Pricing Schedule | Define Basic tow | The Contractor being asked to define this. See **Revised Schedule B- Pricing Worksheet** per ADM 4 |

| 97 | Schedule B Pricing | Schedule B Pricing Schedule | Define right-of-away | The RFP would use the common legal definition, unless another definition is identified by the Bidder for pricing purposes. |
|---|---|---|---|---|
| 98 | Schedule B Pricing | Schedule B Pricing Schedule | Why are there no EV storage, and recovery rates? | See Revised **Schedule B-Pricing** per ADM 4 |
| 99 | Conflic of Interest Attesta | 2 | What are definitions of towing company, towing service, impound lot, body shop, towing related enity | Industry Standard. See Response to Questions 59 and 60 |
| 100 | Conflic of Interest Attestation | | This is against State of Michigan law and resticts the rights of small business owners. The MTA protests this requirement. | This does not appear to be a question. |
| 101 | Conflic of Interest Attestation | | MCL 18.1261(1). The statute states "all other things being equal, preference shall be given to products manufactured or services offered by Michigan-based firms. ..." It appears this RFP violates this statute. | See Response to Question 58 |
| 102 | Conflic of Interest Attestation | 3 | What are definitions of towing company, towing service, impound lot, body shop, towing related enity | See Response to Question 99 |
| 103 | Conflic of Interest Attestation | | This is against State of Michigan law and resticts the rights of small business owners. The MTA protests this requirement. | This does not appear to be a question. |
| 104 | Conflic of Interest Attestation | | MCL 18.1261(1). The statute states "all other things being equal, preference shall be given to products manufactured or services offered by Michigan-based firms. ..." It appears this RFP violates this statute. | See Response to question 58 |
| 105 | Conflic of Interest Attestation | 4 | Again, why does this RFP restrict small business owners rights to bid on state taxpayer proposals? The MTA protests this RFP due to it's unfair bias against tax paying small business owners within the State. | This does not appear to be a question related to better understanding the provisions of this RFP. |
| 106 | Conflic of Interest Attestation | 5 | Does this mean that a tower, body shop, or towing related enity can't engage in deals for towing services or rates with Contractor prior to RFP being awarded? | Bidder is free to discuss rates with proposed Service Providers prior to submitting to establish pricing. |
| 107 | Conflic of Interest Attestation | 6 | Define nominal value | It is a value that is not of a significant amount. |
| 108 | Conflic of Interest Attestation | 8 | It this statement who are competitors to the bidder? Is this refering to bidder and towers? Can a bidder meet with towers prior to the award to discuss pricing and towing services in exchange for support of their bid? | See Responses to Question 88 and Question 105 |
| 109 | Conflic of Interest Attestation | 8 | What contracts with towing companys is this referring to? Who decides and approves contract language? | "Contracts with towing companys" refers to any contracts developed between the Contractor and towing companies to fulfill obligations under the RFP. Unclear what is meant by "approves" contract language. State will not provide legal advice. |

| 110 | RFP, Section 10 | 6 | Does this proposal violate Executive Directive 2019-08.  The directive states by March 31, 2019, the director of the Department shall adopt policies and procedures consistent with this directive with the objective of increasing purchases from and contracts with Geographically-Disadvantaged Business Enterprises for supplies, materials, services, insurance, utilities, third-party financing, equipment, printing, and all other items needed by state departments or agencies, including contracts for the construction, alteration, repair, or demolition of a facility.  The policies and procedures also must apply to departments and agencies exercising procurement authority delegated by the Department. | This does not appear to be a question related to better understanding the provisions of this RFP. Nothing in this RFP is intented to or will superceed or violate applicable law or regulation. |
| 111 | RFP, Section 10 | 6 | Why does this RFP exclude Michigan business based towing related entities that operate in geographically-disadvantage areas of the state? A business in Toledo that tows can bid on this but a business in Luna Pier can't?  How can this RFP justify limiting tax paying Michigan citizens from submitting a proposal? | Nothing in this RFP is intended to or will superced or violate applicable law or regulation. |
| 112 | RFP 1.1.B | | What is requirement for Contractor to select towing company's that protect those they are serving?  How are towing companies vetted to make sure public is safe, how are they selected in order to make sure their actions don't create hazzards at an emergency scene, what experiance levels are the Contractors tasked to select towers with? What is reprocussions if Contractors selects towers that endanger the public, emergency responsdors? | The process will be determined by the Contractor.  All Service Providers put on the Contractor's roster must meet State law and applicable licensing. |
| 113 | RFP | | Does this violate MSP order to not allow profit of admin fees? | Nothing in this RFP is intended to or will superced or violate applicable law or regulation. |

| | | | | |
|---|---|---|---|---|
| 114 | RFP- 250000000142-Statewide Towing Dispatch and Services-Final 12-19-24, Regarding General Requirements, Section B, Subsection 8: "Payment for services rendered will be made by the Vehicle Owners to the Contractor, not to the Service Providers directly." | 43 | Prelude to Question 1:  It appears the intent of this requirement is to ensure adherence to the Contractor's Schedule B pricing. However, requiring Service Providers to release vehicles to Vehicle Owners and the Contractor to invoice for future payments, instead of the Service Provider collecting payments at the time of vehicle release, is atypical in the industry. This approach would likely lead to a significant percentage of unrecovered payments, jeopardizing the program's success.  To our knowledge, no City, County, or State agency, or Service Provider in the U.S., implements such a model.  Best practice solutions exist that can be implemented to ensure that Service Providers adhere to the Schedule B pricing with full transparency, auditing mechanisms, and penalties for violations.

Question 1:Would the State consider revising this requirement to allow Service Providers to collect fees directly from Vehicle Owners at the time of vehicle release? | Yes, it could be considered, provided that doing so would be in accordance with applicable laws and regulations. |
| 115 | Schedule B: Pricing Worksheet and Usage Data | | Question 2:Based on feedback from the Statewide towing industry would the MSP consider the pricing framework to be applied to all districts? *Attachment labeled: MSP Pricing Proposal* | Contracors may choose to apply pricing statewide,  for multiple districts or for individual districts.  See Revised **Schedule B-Pricing** per ADM 4 |
| 116 | Vendor Questions Worksheet | 15 | Please provide the names of all companies, employees, agents or representatives of companies or affiliated entities that participated in developing components of the RFP | The RFP was developed internally by the State. |
| 117 | Vendor Questions Worksheet | 15 | Please provide the names of all companies, employees, agents or representatives of companies that will participate in the evaluation of proposals received in response to the RFP. | All responses/proposals resulting from the RFP will be reviewed internally by the State. |
| 118 | Schedule A - 1. Requirem | 40 | Why are bidders not allowed to own or operate a towing company, towing service, impound lot, body shop or any other towing -related enity within the State of Michigan.  What is difference if someone just outside the state line owns one of the above?  The Michigan Towing Association protests this RFP and in particular this requirement that exludes in state towers but allow neighboring state towers to bid. See MCL 18.1261(1). The statute states "all other things being equal, preference shall be given to products manufactured or services offered by Michigan-based firms. ..." | This does not appear to be a question directed at understanding the provisions of the RFP. The State will not provide legal guidance. |
| 119 | Schedule A - 1. Requirements | 40 | Define "towing related entity" | See Response to Question 59 |
| 120 | Schedule A - 1. Requirements | 40 | Define "towing service" and explain how it differs from "towing company" or "towing related entity" | Industry standard definitions.  See Responses to Questions 59 and 60. |

| 121 | Schedule A Section 1.1.A(1) | 41 | Section 1.1.2 of the RFP requires the Contractor to use the "5.3ection 1.1.2 of the RFP requires the Contractor to use the "closest wrecker" system for dispatching authorized wreckers. Doesn't placing competing authorized service providers in "closest wrecker" situations place those providers in violation of MCL 257.676c, for approaching accident situations prior to being called by law enforcement to assist? | This does not appear to be a question directed at understanding the provisions of the RFP.  The State will not provide legal guidance. |
| 122 | Schedule A Section 1.1.A(1)(a) | 41 | Define "same geographic region" - is it city, county, MSP district? | It could be any of those depending on how the rates are developed based on how the geographic business area is tied together. |
| 123 | Schedule A Section 1.1.B | 41 | Section 1.1.B of the RFP addresses the establishment of standards for towing operators. MSP Official Order #48, which set out the rules, regulations and requirements for towers providing service to MSP was ruled void by the Court of Claims in December, 2020, because those rules, regulations and requirements were not properly promulgated under the Administrative Procedures Act ("APA"). Will the standards (rules) established by the third party administrator, acting in the shoes of the MSP, be required to be properly promulgated under the APA? requirements for towers providing service to MSP was ruled void by the Court of Claims in December, 2020, because those rules, regulations and requirements were not properly promulgated under the Administrative Procedures Act ("APA"). Will the standards (rules) established by the third party administrator, acting in the shoes of the MSP, be required to be properly promulgated under the APA? | This does not appear to be a question related to better understanding the provisions of this RFP. The State will not provide legal guidance.  Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |
| 124 | Schedule A Section 1.1 | 42 | If the Contractor is setting fees for towers, will those, as regulated fees, need to be properly promulgated through the APA? | The State will not provide legal advice. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |
| 125 | Schedule A Section 1.1 | 42 | Is a Contractor going to be subject to the same restrictions imposed on unit of government from requiring a towing service to pay a fee for responding to the scene of an impound, accident, disabled vehicle or abandoned vehicle and providing towing services under MCL 257.676d(1)? And will towers be precluded by MCL 257.676d(2) from paying a fee to the contractor in order to induce the Contractor to put them on the towing list? As the Contractor is not a local unit of government, it would appear immune, and could require fees or accept inducements. How will that be dealt with? | The State will not provide legal advice. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |

| 126 | Schedule A Section 1.1 | 43 | What process will be used to create the tow roster? Has MSP proivded rules and procedures to follow? What are the rules and procedures that a Contractor must adhere to when developing said rules and procedures. What procedures are in place to prevent these spots from being auctioned? | MSP will not be providing guidelines to the Contractor on how to select and choose vendors outside of the requirements set forth in this RFP. Also see Responses to Questions 25, 30 and 67 |
|---|---|---|---|---|
| 127 | Schedule A Section 1.1 | 42 | MCL 257.676c(1) prohibits a person, including a tower, from traveling to the scene of a motor vehicle accident. MCL 257.676c(2)(a) provides an exception to a law enforcement agency or a tower requested to the scene by the vehicle owner. It assumes that law enforcement may summon a wrecker to the scene through subsection (3), but does not provide for a third party administrator acting independently. How will this be justified? | The State will not provide legal advice. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |
| 128 | Schedule A Section 1.1 | 42 | Has MSP/DTMB reached out to other agency/committee partners both inside the State and outside the State? Has the Michigan Traffic Incident Management committee been consulted? | See Response to Question 85 |
| 129 | Schedule A Section 1.1 | 42 | How will MSP dispatching work in areas where a local or county wide 9-1-1 dispatch is already in place dispatching local, county and MSP accident calls? | This contract would superceed any other agreements, related to MSP,  in areas where these are implemented. |
| 130 | Schedule A Section 1.1 | 43 | Will the Contractor information be subject to the Michigan Freedom of Information Act? | All public records, as defined under Michigan's Freedom of Information Act, are subject to the act.  Disclosure of such information may be subject to applicable exemptions, as provided under the act. |
| 131 | Schedule A Section 1.1.B(7) | 43 | Section 1.1.B(7) requires the Contractor to determine, maintain and require fair and reasonable towing fees consistent with regional rates and which "will be charged to all customers". If the vehicle owner is present and has contacted MSP to help with the accident and the tow, is that vehicle a consensual tow which cannot be regulated pursuant to 49 USC 14501(c), and assuming so, how does the Contractor reconcile that with the "charged to all customers" provision? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |
| 132 | Schedule A Section 1.1.B(7) | 43 | How are towing fees to determined? What will be considered "fair and reasonable"? Will the Contractor be subject to any MSP oversight in the establishment of the rates? | See Response to question 68. MSP will not be involved in setting or "overseeing" any rates. |
| 133 | Schedule A Section 1.1.B(8) | 43 | MCL 257.252a, MCL 257.252g and MCL 257.252i allow a towing company to collect towing and storage fees from a law enforcement tow directly from the vehicle owner. Section 1.1.B(8) would require the tower to waive their statutory right to collect towing and storage fees from the vehicle owner. How can MSP justify requiring an entity to waive a statutory right? | This does not appear to be a question related to better understanding the provisions of this RFP. The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |

| 134 | Schedule A Section 1.1.D | 45 | Section 1.1.D requires the Contractor to provide ongoing and historical reports for towing transactions. Will those reports be provided to towers so that towers can use them to provide better service? | That will be determined by the Contractor. |
|---|---|---|---|---|
| 135 | Schedule A Section 1.1 | 43-45 | The Statement of Work Contract Activities is vague regarding the extent of interactions between the Contractor and towers. Is the Contractor taking on all the responsibilities set out in the Michigan Abandoned Vehicle Statutes (MCL 257.252a, et seq.)? Can the Contractor become liable for improper abandonment process or failure to timely enter vehicles into LEIN or notify towers or SOS of events? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |
| 136 | Schedule A Section 1.1.E | 45 | Section 1.1.E requires the Contractor to have a process to handle disputes between authorized towing providers. Will that process also handle disputes between the Contractor and towing providers or troopers on scene and towing providers? As Contractor will presumably be an "actor of the state", standing in the shoes of MSP for the many of the purposes of the Michigan Abandoned Vehicle Statutes, how will the towing providers due process rights be protected in this dispute process? In the last version of MSP Official Order #48 and the UD-041, towers were afforded no grievance procedure and could be removed from the rotation without cause or notice. Is there any legal authority for the Contractor to assume the role of settling disputes between MSP and a tower? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |
| 137 | Schedule A Section 1.1. | 43-45 | MCL 257.252 authorizes a "police agency or a governmental agency designated by the police agency" to remove a vehicle from public or private property in the event of an accident or crime. When law enforcement summons a tower to the accident scene, the tower is working under the authority and direction of the law enforcement agency. When MSP, as the law enforcement agency, distances itself from all aspects of selecting authorized towers, establishing processes and procedures, setting prices, determining which wrecker to respond and all else to do with the towing process, the tower is working for, with and under the direction and authority of the Contractor, not MSP, and the authority and direction conferred by MCL 257.252d gets quite blurred. If a trooper on scene gives a direction to a tower contrary to an established Contractor procedure, who does the tower obey. Further, where does the right for the tower to be on scene come from, as that right comes from law enforcement through 257.252d and 257.676c. And if something goes wrong because of conflicting Contractor policies and MSP directions, how is the tower shielded from liability for following one or the other? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |

| 138 | Schedule A Section 1.1.E | 45 | How can the dispute process not involve MSP, when MSP is the authority at the accident scene and MCL 257.252d does not allow a law enforcement agency to delegate their authority to a third party, only to "a governmental agency designated by the police agency"? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |
|---|---|---|---|---|
| 139 | Schedule A Section 1.2 | 46 | Section 1.2 requires the Contractor to provide requested records or documentation during the transition period and must finish out any vehicles impounded but not redeemed. Will the Contractor be given LEIN access in order to complete this process? Do requested records include those requested by towing providers, such as TR-52's? | No, the Contractor will not be given LEIN access. All requested records could include TR-52's. |
| 140 | Schedule A Section 1.4 | 47 | Section 1.4 of the RFP requires the Contractor to conform with the IT policies, standards and procedures of the State. Will such policies, standards and procedures include the sharing of confidential information from towing companies to the Contractor without restrictions? Can an application  require a tower to allow the application access to the contents of the tower's device? | State PSPs regarding the protection of Date will apply to State owned data, information shared between the Contractor and third parties would not be subject to such data protection policies unless the State takes ownership of all such data.  Unless that data shared with the State though any Software that is employed to support Contractor Services, and is strictly shared between the Contractor and any Towners, then it wouldn't be State Data and subject to State Data protection policies, if it is incorporated into that solution, it would be.

The second question is not entirely clear, but the data sharing requirements and access rights between the Bidder and tower would be based on contract between those parties.  MSP only needs certain information regarding the tow, as required by law. |
| 141 | Schedule A  General | 40-47 | Can a Contractor also provide towing directly either under their name or that of an assumed name? If, so how is this potential conflict going to be handled? Can a contractor create tow storage lots?  Can a contractor auction off cars? Can a Contractor have a tower to provide service for free? How would Contractor provide a resolution in circumstance where missing items are claimed, damage is claimed, etc | No, the RFP requirements do not allow for the Contractor to, directly or indirectly, own or financially benefit from any tow service, other than through the admin fee/overhead and profit.  No, under the requirements of this RFP, the Contractor would not be allowed to create tow storage lots, auction cars, or require that a tower to provide service for free.  Dispute resolution processes that are not expressly provided under the terms of any resulting contract, could be through any means available under applicable law.  For additional information see Responses to Question 57 and 92. |
| 142 | Schedule A  General | 40-47 | Towers should be protected as to not being forced to violate Michigan law of operating a device while driving. How will MSP and the Contractor mesh the requirement of using a hand held device with the laws against a commercial driver using a hand held device? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |

| 143 | Schedule A General | 40-47 | Will towers dispatch centers receive an alert so drivers aren't required to break the law and interact with app? | The Contractor is the Dispatcher.  They will receive  the request for service/dispatch of Service Providers from the MSP and arrange for Service Providers to go to the scene. Contractor will determine how Service Providers will be contacted. |
| 144 | Schedule A General | 40-47 | The "Closest Wrecker" provision would create a hazardous situation on Michigan roads.  Towers would be incentized to park trucks around accident scenes and lead to accident chasing which is in violation of Michigan law.MCL 257.676c(2)(a). How will this be addressed? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |
| 145 | Schedule A General | 40-47 | How are rosters to be determined by the Contractor and under what standards? Will ther be an appeal process for those not chosen? | See Response to Question 25 |
| 146 | Schedule A General | 40-47 | What prevents a roster spot from being obtained by unethical acts? | This does not appear to be a question designed at better understanding the provisions of the RFP.  However, to be clear, State and federal laws may be implicated by any unethical activity under any resulting contract. |
| 147 | Schedule A General | 40-47 | Vehicle Owners have a duty under law (MCL 257.252d1 and MCL 257.618a(5) and (7)) to pay towing and storage fees to towers from law enforcement tows.  Why does the RFP provide a means for state statue not being followed and to be waived by the tower? This is a violation of Michigan Law and the MTA protests this RFP as such. Vehicle owners and courts are required to send payments to towers/custodians, not to third party vendors that are taking charging an additional fee to the vehicle owner. 257.252a(14), 257.252a(15), 257.252a(17), 257.252b(9), 257.252b(10, 257.252e, and 257.252F(3)(c) state that towing agencies must be paid by state if violation occurs in process of vehicle. How will MSP avoid being liable under these provisions and statutes? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |
| 148 | Schedule A General | 40-47 | Will the Contractor have the right/obligation to pursue unpaid towing and storage fees from vehicle owners on behalf of the towers? | Once a vehicle in storage is deemed abandoned, Abandoned Vehicle disposition and procedures are handled outside of this contract. See Revised Schedule A, Section 1.1.C. per ADM 2. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |

| 149 | General | | MCL 257.252 authorizes a 'police agency or a governmental agency designated by the police agency" to remove a vehicle from public or private property in the event of an accident or crime. When law enforcement summons a tower to the accident scene, the tower is working under the authority and direction of the law enforcement agency. When MSP, as the law enforcement agency, distances itself from all aspects of selecting authorized towers, establishing processes and procedures, setting prices, determining which wrecker to respond and all else to do with the towing process, the tower is working for, with and under the direction and authority of the Contractor, not MSP, and the authority and direction conferred by MCL 257.252d gets quite blurred. If a trooper on scene gives a direction to a tower contrary to an established Contractor procedure, who does the tower obey. Further, where does the right for the tower to be on scene come from, as that right comes from law enforcement through 257.252d and 257.676c. And if something goes wrong because of conflicting Contractor policies and MSP directions, how is the tower shielded from liability for following one or the other? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceded or violate applicable law or regulation. |
| 150 | General | | During performance of the contract, will the contractor be considered the towing agency, towing service or custodian under the Special Anti Theft Laws, MCL 257.252 et seq.? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceded or violate applicable law or regulation. |
| 151 | General | | Please provide additional information concerning the types of disputes that may arise between authorized towing providers. If there is no role for MSP in this process, what is the anticipated appeal process if the Contractor is unable to resolve the dispute. | See Response to Question 80 |
| 152 | General | | Has MSP/DTMB reached out to other agency/committee partners both inside the State and outside the State? Has the Michigan Traffic Incident Management committee been consulted? | See Response to Question 85 |
| 153 | Schedule A Section 4.3 A | 59 | Who is the Contractor reporting the information to in Section 4.3A? LEIN? MSP? If LEIN, how will Contractor be allowed access? | This information will be reported to MSP. |
| 154 | Schedule B | 64 | Why is the Contractor allowed to discount a tower's fees? | Contractors are free to propose their own fee schedules. |
| 155 | General | | MCL 257.252a(6) establishes that District Courts are to be used to determine "reasonable" towing and storage fees. How is the Contractor to determine what "reasonable" towing and storage fees in light of this? Will towers be allowed to challenge the MSP/Contractor established "reasonable" towing and storage fees? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceded or violate applicable law or regulation. |

| 156 | General | | Will the determination of reasonable towing rates break down all aspects of the towing services used by the tower, including vehicles used, operators, equipment, etc? | The Contractor will determine reasonable fees and rates, which could include breaking down all aspects of the towing services. |
| 157 | General | | MCL 324.8902(2) requires a tower to remove all glass and other injurious substances from an accident site. Will the "reasonable" fees include environmental clean up of injurious substances? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |
| 158 | General | | Will the fee paid by the vehicle owner to the Contractor be a separate line item distinct from the tower's fees? | All payments will be required to be made in accordance with applicable law or regulations. |
| 159 | General | | Will the towers in the towing rotation be under contract with the Contractor to provide towing services for MSP? | The Contractor will determine contracting arrangement or agreement they make with towers in order to lock in fees to be charged and to hold the Service Providers to following State law. |
| 160 | General | | Will the towers have a right of action against the Contractor for unpaid towing and storage fees? | Abandoned Vehicle disposition and procedures are handled outside of this contract. See Revised **Schedule A, Section 1.1.C.** per ADM 2. |
| 161 | General | | Will the Contractor do collections for the towing companies, including filing actions for unpaid towing and storage fees under MCL 257.252i? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |
| 162 | General | | How often will towing and storage fees be reviewed and amended? | See **Schedule A, Section 5. Pricing** |
| 163 | General | | MCL 257.252d1 and MCL 257.618a(5) give law enforcement the authority to remove vehicles that have been in crashes from the roadways. What authority allows law enforcement to delegate that to an entity that is not another governmental agency? | The State will not provide legal guidance. Nothing in this RFP is intended to or will superceed or violate applicable law or regulation. |
| 164 | General | | How can this RFP be pursued when the previous RFP 230000000685 is under litigation? | The State will not provide legal guidance. |